**In re Cecil Monroe MUSSER, II, Teresa Perdue Musser, Debtors.**

**COMMUNITY HOSPITAL OF ROANOKE VALLEY, INC., Plaintiff,**

v.

**Cecil Monroe MUSSER, II and Teresa Perdue Musser, Defendants.**

**Michael J. AHERON, Trustee, Plaintiff,**

v.

**Cecil Monroe MUSSER, II and Teresa Perdue Musser, Defendants.**

Bankruptcy No. 7–81–01090.
Adv. Nos. 7–81–0422, 7–81–0446.

United States Bankruptcy Court,
W. D. Virginia,
Roanoke Division.

March 1, 1982.

---

F. Jack Ward, Roanoke, Va., for debtors/defendants.

Frank N. Perkinson, Jr., Roanoke, Va., for plaintiff (Community Hospital).

Michael J. Aheron, Roanoke, Va., trustee.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

The question presented is whether a debt owed by the joint debtors in this case to the Community Hospital of Roanoke Valley, Inc. (Hospital) may be discharged. In trial of these proceedings, the parties raised the issues of whether a claim for personal injury may be assigned by the injured party, and whether the proceeds of that claim may be claimed as exempt property under § 522(b)(2)(A) of the Bankruptcy Reform Act of 1978 (the Code), 11 U.S.C. § 522(b)(2)(A).

These proceedings were brought on by the Hospital on its complaint to determine dischargeability. The debtors, Mr. and Ms. Musser, were involved in a serious automobile accident on December 21, 1980. They were both admitted to the Hospital for treatment following the accident. Mr. Musser was discharged from the Hospital on January 10, 1981, and Ms. Musser on February 21, 1981. The Mussers owed the hospital in excess of $16,000.00 for this admission. Ms. Musser was subsequently readmitted for further treatment and stayed in the Hospital from May 4, to May 23, 1981. The charges for Ms. Musser's second admission exceeded $5,000.00.

Some time after their initial admission, the Hospital brought Ms. Musser two "Assignment of Insurance Benefits and Release of Information" forms dated December 21, 1981. Ms. Musser signed one form for herself and one on behalf of her husband. Each assignment form contained a provision waiving "homestead and all other exemptions." The Hospital employee who obtained the signatures testified that she had checked with the nurse's station to assure that Ms. Musser was capable of transacting business before she proceeded to explain the assignment and get Ms. Musser's authorizing signature. At trial, Ms. Musser testified that she did not recall anything that happened during the week following the accident.

In any event, the Hospital was aware that the Mussers' accident had been the fault of a named third party, and that the Mussers were represented by legal counsel. The Hospital informed the tortfeasor's insurance company that it had an assignment of benefits from the Mussers. The Hospital also entered negotiations with the Mussers' attorney to settle the outstanding hospital bill.

At the time of Ms. Musser's second admission, the status of the Mussers' claim against the third party tortfeasor was uncertain. As both of the debtors were unable to work after the accident, Mr. Musser applied for financial assistance under the provisions of the Hill Burton Act to cover the cost of Ms. Musser's second admission. *See* 42 U.S.C. §§ 291–291*o*. The Hill Burton application contained a pledge by the applicant, Mr. Musser, that he would seek assistance from other sources for payment of the hospital bill, and that he would "assign, or pay, to the hospital" any amounts received from such other source.

At some point during Ms. Musser's second admission to the Hospital, in May, 1981, the Mussers reached a settlement with the third party tortfeasor. The Mussers accepted a check for approximately $22,000.00 representing full settlement of their claim less agreed attorneys' fees. On advice of counsel, the Mussers did not pay the Hospital for its services.

On September 4, 1981, the Mussers filed a joint petition for relief in this Court pursuant to Chapter 7 of the Code. The debtors each claimed $4,000.00 equity in their mobile home as a homestead exemption. In addition, the debtors claimed two automobiles and some personal property as exempt.[1] The total value of both debtors' homestead exemptions is $9,500.00.

On October 30, 1981, the Hospital filed its complaint in this Court seeking to have the debtors' debts to the Hospital declared nondischargeable pursuant to § 523(a)(2) of the

Code. The Hospital further prays that the debtors' homestead exemptions be declared ineffectual as against the Hospital because of the waiver of exemptions found in the Hospital's assignment forms.

The trustee filed his complaint for recovery of property on November 11, 1981. The debtors' petition showed $3,940.00 cash on hand at the time of filing. The trustee seeks turnover of those scheduled assets of the estate which have been withheld by the debtors.

■ It is established in Virginia that a personal injury claim is not assignable. *City of Richmond v. Hanes*, 203 Va. 102, 105, 122 S.E.2d 895 (1961); *see In re Musgrove*, 7 B.R. 892, 3 C.B.C.2d 556 (Bkrtcy.W. D.Va.1981). The Hospital obtained "assignments" from the Mussers under questionable circumstances, at best. Nonetheless, the alleged assignments were void *ab initio* because the subject of those alleged assignments is a non-assignable interest.

In Virginia, a debtor's exemptions from a bankruptcy estate are determined in accordance with state law. Virginia is one of the states that has "opted out" of the "federal exemptions" established in § 522 of the Code. *See* Va.Code § 34–3.1 (Supp.1981). Accordingly, the debtors in this case are entitled to exempt property as enumerated in state or local law on the date of the filing of their petition. 11 U.S.C. § 522(b)(2)(A). Under Chapter 2 of Title 34 of the Virginia Code, the debtors are each entitled to homestead up to $5,000.00 in real or personal property, including money. Va.Code § 34–4 (Supp.1981). In addition, a debtor may exempt from his estate any interest in property held as tenants by the entireties or joint tenants, to the extent that interest is exempt from process under state law. 11 U.S.C. § 522(b)(2)(B).

Under the Virginia Code, any hospital providing treatment to a person whose injuries result from the negligence of another

---

1. Although the debtors did not properly itemize their exemptions on Schedule B4 of their petition, that schedule does incorporate their homestead deeds by reference. The Court is thus allowing the property scheduled in the homestead deeds to be exempted from the estate.

has a lien on the claim of the injured person, for the reasonable cost of services rendered, not to exceed $500.00. Va.Code § 8.01–66.2 (Supp.1981). The hospital's lien becomes effective when the hospital serves written notice upon the tortfeasor or the attorney for the injured party. *Id.* at § 8.01–66.5. The evidence showed that the Hospital provided the debtors' attorney with proper notice of its lien for the first admission on December 23, 1980, and for the second admission on May 8, 1981. The Hospital's claim for amounts due is, therefore, a secured claim to the extent of the statutory lien amount, or $500.00. The balance of the Hospital's claim is unsecured.

■ To the extent a debtor's claimed exemptions are properly allowed exemptions under § 522(b) of the Code, any waiver of those exemptions executed by a debtor in favor of a creditor holding an unsecured claim is unenforceable in a case under the Code. 11 U.S.C. § 522(e). Consequently, the Hospital's claimed waiver of exemptions is unenforceable to the extent the Hospital's claim is an unsecured claim.

■ Failing in a claim of waiver, the Hospital would have this Court find the unsecured portion of its claim declared nondischargeable pursuant to § 523(a)(2) of the Code. A debt incurred by the debtor by "false pretenses, a false representation, or actual fraud" may be declared nondischargeable under § 523(a)(2)(A). There was no evidence produced at trial to indicate that the Mussers, either at the time of their initial admission, or at the time of Ms. Musser's second admission, made false or fraudulent representations concerning their financial status, or the pending tort claim. Their conduct with reference to the hospital's claim was in good faith and with advice of their counsel and the hospital had full knowledge of the existence of debtors' counsel.

In the alternative, a debt may be held nondischargeable under subsection (a)(2)(B) if the debtor obtains services by use of a materially false, written financial statement on which the creditor relies, and which the debtor caused to be made with intent to deceive. Use of the conjunctive "and" indicates that all four of the conditions set forth in subsection (a)(2)(B) must be met before a debt may be excepted from discharge. The burden of proof which must be clear, cogent and convincing is upon the plaintiff. Rule 407 (Federal Rules of Bankruptcy Procedure). At trial, representatives of the Hospital testified that they did not *rely* on the financial statement submitted as a part of the Hill Burton application in rendering the service required to complete Ms. Musser's second treatment. In fact, the Hospital is required by the terms of the Hill Burton Act to provide free or reduced cost hospital care to patients who show a need for such service. The Hospital, likewise, failed to establish the debtors' intent to deceive by means of the Hill Burton application.

In accordance with the foregoing opinion, the debtors' assignments are void, and the debt to the Hospital is adjudged dischargeable. The Hospital is entitled to priority in funds held by the Trustee as claimed statutory lien of $500.00. Further, the debtors' claimed exemptions are allowed, to the extent provided by title 34 of the Code of Virginia. Any assets of the debtors in excess of properly scheduled and allowed exemptions are and remain property of the estate to be administered by the trustee.

The trustee raises issues in adversary proceeding number 7–81–0446 concerning turnover of those assets not claimed exempt and a further hearing in this Court will be conducted on April 13, 1982, at 1:30 p. m. to determine the issues therein. Orders will be so entered.